**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MACKENZIE SMITH, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-5092** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2023, upon consideration of

the City of Philadelphia's Motion to Dismiss the Amended Complaint, it is **HEREBY**

**ORDERED** that the Motion is **GRANTED.**  Plaintiffs' claims against Defendant City of

Philadelphia are **DISMISSED**.

BY THE COURT:

_____

GOLDBERG, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MACKENZIE SMITH, et al., | : | |
| Plaintiffs, | : | |
| | : | |
| | : | **Civil Action** |
| v. | : | **No. 22-5092** |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| Defendant. | : | |

**DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

Defendant, the City of Philadelphia, by and through the undersigned counsel, hereby files this Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In support of this Motion, Defendant incorporates the attached Memorandum of Law.  Defendant respectfully requests that this Court dismiss the claims asserted against it.

Date:  March 31, 2023

Respectfully submitted,

 /s/ *Anne B. Taylor*
Anne B. Taylor
Chief Deputy City Solicitor
Pa. Attorney ID No. 206057
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5381 (phone)
215-683-5397 (fax)
anne.taylor@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MACKENZIE SMITH, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-5092** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs Robert Clendaniel, Jonathan Dilliplane, Danielle DiTommaso, Graham Foley, Benjamin Grossman, Megan Heckert, Allen Rue, Jr., Jason Jennings, Kelly Larson, Mackenzie Smith, Michael Smith, Rhoda Smith, Daniel Tran, Austen Travis, and Matthias Wagman have filed a putative class action, generally alleging that their vehicles were unconstitutionally seized from their last-parked location and that they were provided insufficient post-deprivation notice or post-deprivation process. *See generally* Am. Compl., ECF No. 10, ¶¶ 322-326. By their two-count Complaint, Plaintiffs seek to hold the City of Philadelphia (the "City" or "Defendant") liable for the relocation of their vehicles, contending that such relocation subjected their property to an unlawful seizure, in contravention of the Fourth Amendment, and to a due process violation, in contravention of the Fourteenth Amendment. *See generally id.*

Though superficially compelling in their sweeping narration, accepted as true for purposes of a motion to dismiss, Plaintiffs' specific allegations for each of their unique experiences undermine the very claims they seek to pursue. *Compare* Am. Compl. ¶¶ 27-95 *with* ¶¶ 96-314. Because Plaintiffs have not alleged facts that establish they each experienced an

injury in fact attributable to the City, and have not adequately alleged a violation of their
constitutional rights, the City now moves to dismiss Plaintiffs' claims in their entirety.

## I.        BACKGROUND

Plaintiffs allege that "the City has a patchwork of practices, policies, and procedures,
written and unwritten, which collectively authorize the City, its agents, and employees, to
relocate private vehicles legally parked on the City's streets without adequate prior or post-tow
notice to the vehicle's owner or operator." Am. Compl. ¶ 2. They further allege that "the City
and its agents tow cars to arbitrary spots at considerable distances from their original locations,
unbeknownst to the vehicle owner or operator. These secondary locations are often illegal,
metered, or timed parking spots." *Id.* ¶ 3. "The City moves vehicles at its convenience and
leaves it to vehicle owners and operators to deal with the consequences." *Id.* ¶ 4. Entities that
tow vehicles are supposed to report this information to the City. *See id.* ¶¶ 33-51. Plaintiffs
contend that the City does not adequately enforce the provision of information about vehicle
towing or adequately track vehicle relocations, such that individuals cannot identify who moved
their vehicles and where they were moved. *Id.* ¶¶ 72-95.

Each of the fifteen Plaintiffs had a unique experience with regard to the relocation and
recovery, or lack thereof, of their vehicle.

Robert Clendaniel parked his vehicle on October 30, 2022. After checking on it on
November 1, he did not return to his parking space until November 5, 2022. Discovering his car
no longer in the location, Mr. Clendaniel went to the PPD substation on South Street, and, after
neither the District nor the PPD Tow Squad had any record of his car, was advised to walk
around and look for it. Shop owners on the block suggested they had seen cars towed because of
Water Department work on the block. By November 8, Mr. Clendaniel filed a stolen vehicle

report with both the PPD and his insurance company.  Two days later, he received a call from a Detective advising him that his car was located on the 1400 block of Water Street.  During the time it took for him to get to that location, a private towing company, Freddy's Tow Company, towed his car to their lot.  He tripped on the sidewalk outside Freddy's tow lot, and did not recover his vehicle from that private lot until November 14, 2022, at which time Freddy's made him pay a $141 fine.  Am. Compl. ¶¶ 96-110.

Jonathan Dilliplane checked his vehicle (which had been parked in its location in late August) on September 2, 2022, and determined that a posted, unofficial temporary no parking sign likely did not apply to the location at which he parked.  The next morning he discovered that his car was no longer in that location.  He called the Ninth Police District, which did not have information about the location of his vehicle.  While the Ninth District did not initially have information, an officer there called him about two and a half hours later to advise that the Philadelphia Parking Authority had towed his vehicle to a PPA impound lot.  There he learned that his vehicle was ticketed by the Philadelphia Police Department and then towed by the PPA. He was unsuccessful in challenging his ticket before PPA, and spent money to pay fines, tickets, fees, and a rideshare to get his vehicle from the PPA lot.  Am. Compl. ¶¶ 111-131.

Danielle Ditommaso parked her vehicle on or near the 2200 block of the Ben Franklin Parkway on August 28, 2022.  When she returned to that location on August 30, 2022, she noticed posted temporary no parking signs that had not been up when she last was there.  Her vehicle was no longer in the location.  She called the Ninth Police District, and was advised that Police had moved vehicles in advance of a music festival, but that there was no further information available because her vehicle was not entered into the system.  They provided her the contact information for several private towers who might have moved her car, but none of

3

them disclosed that information to her.  She then spent a month looking for her car before calling the Ninth District again, at which time she was told it was taken to West Segley Avenue in Fairmount Park.  She went to that location but her vehicle was gone.  She filed a claim that the City had "stolen her vehicle," which claim has not yet been paid, but appears not to have reported that her vehicle was stolen from its last location.  Am. Compl. ¶¶ 132-156.

Graham Foley parked after midnight on June 22, 2022 on the 1900 block of Reed Street.  The next morning, he went back to that location, saw several temporary no parking signs posted, and discovered his car was no longer there.  He called the Seventeenth District but nobody answered, and so he went there about twenty-five minutes later.  An officer at the district checked and did not have any record of his vehicle, but suggested he contact PPA.  By approximately 9:00 a.m. he had called the PPA impound lot on Weccahoe Avenue and learned that his vehicle was there.  By 10:00 a.m. he had recovered his vehicle from Weccahoe Avenue, after paying a $175 fine imposed by PPA.  He attempted to appeal the PPA fine through the PPA process, but was unsuccessful in doing so.  Am. Compl. ¶ 157-176.

Benjamin Grossman parked his vehicle on the 2700 block of Pennsylvania Avenue – about a half mile from his home on the 1300 block of North Newkirk Street – in early July.  When he next checked on his vehicle about a month later, it was no longer in the spot he had parked it.  Over the next two weeks, he checked with PPA and several private towers, none of which had information about his vehicle.  He contacted the Ninth District on August 11, 2022, six weeks after he had last seen his vehicle, to report his car as stolen. An officer suggested that his car was likely relocated as a result of utility work rather than stolen, given the age of the car (a 2003 Elantra) and the location at which it had been parked.  He searched the area around Girard College, as directed in that call, but could not locate his car.  Several months later, in the

Fall, he called the Ninth District again and a different officer advised that he should look around Lemon Hill.  He did so to no avail.  Six months after he had last seen his vehicle, in January 2023, he tried to file a stolen vehicle report but the answering officer declined to take the report. Am. Compl. ¶¶ 177-89.

Plaintiffs Megan Heckert and Allen Rue, Jr. parked their car in August 2022 on the 2100 block of Arch Street.  At least three weeks later, when they next went to look at their vehicle, it was no longer in the location they had parked it.  They went to Lemon Hill to look for the car, and located it there with a ticket indicating it had been towed at 4:30 a.m. that day, September 18, 2023.  The car made an unusual noise while starting, and the check oil light came on.  A mechanic advised them that the oil pan had been damaged, likely while being towed, and that the car was not operable.  They filed a report regarding the damage, which includes a suggestion that the damage was caused by the PPD Tow Squad, and then filed a claim with the City of Philadelphia Risk Management department, which claim remains pending.  Am. Compl. ¶¶ 190-205.[1]

Jason Jennings parked his car on the 2100 block of Spruce Street on the evening of September 11, 2022, and returned the next morning to discover it was no longer in the location at which he parked it.  He spoke with a PPA officer who advised him to look around nearby blocks for the car.  He called PPA, who had no record of his car being in their impound lots.  He called the Ninth District and several private towing companies, none of which had records that they had towed his vehicle.  He spent time looking at various locations that the people he spoke with

---

[1] As summarized, these plaintiffs do not appear to have any constitutional claim (they were validly ticketed and rapidly located their car), but instead might have a claim that sounds in negligence with regard to how their vehicle was affixed to a Police Tow Squad tow truck.  Such a claim is, in fact, appropriately presented to Risk Management for potential pre-litigation resolution or, alternatively, as a negligence action in the Philadelphia Court of Common Pleas.

suggested cars might be moved to if they were relocated, but did not find his car.  On September 14, he filed a stolen vehicle report with the Ninth District.  On September 16, the officer who took his stolen vehicle report and who had independently also looked for the vehicle, called to tell him that it had been found at 22nd and Market.  The same officer encouraged Plaintiff Jennings to appeal the parking tickets that had accrued because the vehicle was listed in stolen status when the tickets issued.  PPA denied the ticket appeals.  Am. Compl. ¶¶ 206-232.

Kelly Larson parked on the 1500 block of Lombard on October 29, 2022.  When she next returned to her vehicle, two weeks later, she observed that temporary no parking signs were posted and construction was occurring on the street.  She reached out to PPA to inquire if they had possession of her vehicle, but was placed on hold by PPA for a significant period of time and then, when she went to a PPA impound lot in South Philadelphia, was advised that they did not have record of her car.  She then called two Police Districts, but neither had information about her vehicle.  Upon returning to the 1500 block of Lombard Street, she was given the phone numbers of several tow companies and, in calling them, learned that Jane Way Towing was responsible for moving her car.  That company advised her that her vehicle was located on the 1400 block of Water Street, at which location she recovered it.  Am. Compl. ¶¶ 233-246.

Mackenzie Smith routinely used a vehicle owned by her father, Michael Smith.  She parked this car on the street in March 2022, and returned to that location approximately a week later.  Upon her return, the vehicle was no longer in the spot she had parked it.  She contacted the Ninth District, an officer at which advised her that they had no record of her car being towed. She contacted three towing companies, none of whom had a record of towing her vehicle.  By the end of March, having failed to locate her vehicle, Mackenzie Smith reported it stolen to the insurance company and her father purchased her another car.  On April 18, a police officer called

6

to advise her that her car had been located a third of a mile from where she had parked it, at which location it had accrued several tickets and from which location it was towed by PT&T Towing, which is a private company that took the car to its lot at 3200 S. 61st Street.  The insurance company instructed the Smiths that the car was now the property of the insurance company, so that they could not retrieve the vehicle, the tickets, or any personal effects contained therein.  Mr. Smith started appealing the tickets in May 2022.  He was unable to get a copy of the stolen vehicle report; his ticket appeals were denied.  Am. Compl. ¶¶ 247-264.

Rhoda Smith parked her vehicle at 3rd and Bainbridge on February 9, 2022.  After returning from Florida approximately two weeks later, on February 21, 2022, she discovered that her vehicle was not in the spot she had parked it.  She located her vehicle within forty-five minutes, parked in a metered spot and with four tickets affixed to the windshield.  She went to the Third Police District to ask for a record of her vehicle being towed, and was advised that PECO or Philadelphia Gas Works ("PGW") might have done work at that intersection.  She called PECO, who would not confirm if they had done work their but provided the contact information for seven towing companies with which it contracted to tow vehicles.  None of those private companies identified records that they had towed her car.  She also called PGW, who denied doing work at that intersection.  She filed ticket appeals with PPA, which were denied, and then sold her car.  Am. Compl. ¶¶ 265-274.

Dan Tran parked his Range Rover on 18th Street between Delancey and Spruce on March 6, 2022.  Two days later, when he returned to that spot, he saw posted temporary no parking signs and his vehicle was not in the spot.  He called both PPA and PPD, neither of which had a record of his vehicle being towed.  He called both George Smith Towing and Lew Blum, neither of which had a record of moving his car, and both of which blamed the City and/or PPA.  He

then called PPD again to report his vehicle as stolen.  A few hours later, he was called by PPD and told that his vehicle had been located at 18th and Bainbridge.  Rather than cancel the stolen vehicle report, he got new license plates, registration, and title.  Am. Compl. ¶¶ 275-297.

Austen Travis parked his car on the evening of October 17, 2022, on Dickinson Street between Fifth and Sixth streets.  About twenty-four hours later he returned to this parking location, and observed construction on the block and damaged temporary no parking signs.  His vehicle was no longer at the location.  He did not call anybody, but instead walked around the neighborhood and found his car in another location.  Am. Compl. ¶¶ 298-305.

Matthias Wagman parked his vehicle on 15th Street in or around July 2021.  He did not check on this car after having parked there, but instead, about a month later, received a letter from the City stating that his vehicle was parked in a metered spot at 13th Street and Spruce, and had accumulated seven parking tickets.  He appealed the seven parking tickets and lost his appeal at every stage of the process, eventually paying eight hundred and eight dollars to satisfy those tickets.  Am. Compl. ¶¶ 306-314.

Notwithstanding their allegations (comingled with legal conclusions) that the City does not provide adequate pre-tow notice, *see* Am. Compl. ¶ 34, Plaintiffs do not bring a claim for due process violations associated with whether they were provided sufficient notice prior to their vehicles being towed.[2]  Instead, Plaintiffs claim that their Fourteenth Amendment Due Process rights were violated by the City because it: (1) fails to provide adequate post-tow notice to those whose legally parked vehicles are towed; (2) fails to maintain adequate records of relocated

_____

[2] The decision not to pursue a pre-deprivation notice claim makes sense because, as summarized, many of the named Plaintiffs warehoused their vehicles in locations they did not routinely check for days or weeks at a time.  *See, e.g.*, Am. Compl. ¶¶ 96-98, 113-14, 134-35, 180-81, 190-92, 233-34, 248-49, 266-68, 279-80, 308-09.

vehicles and fails to inform owners or operators of the whereabouts of their vehicles; (3) fails to provide adequate safeguards for owners or operators whose vehicles have been towed to locations at which they are ticketed or from which they are towed and impounded; (4) fails to provide adequate safeguards against improperly listing towed vehicles as stolen; and (5) fails to train City personnel on how to maintain records of vehicle relocations and how to respond to reports of relocation.  Plaintiffs also claim that the City unlawfully seized and displaced their vehicles in the "absence of any wrongdoing on their part."  Am. Compl. ¶¶ 322-326.

The City now moves to dismiss the Amended Complaint for several reasons.  The individual Plaintiffs, the alleged experiences of whom are summarized above, do not plead facts that establish they experienced the claimed harms or that, based upon the facts they allege, their claimed harms are attributable to the City.  Furthermore, several of the alleged bases on which Plaintiffs seek relief do not implicate constitutional rights, alternatively warranting dismissal on that basis.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction.  A motion to dismiss pursuant to Rule 12(b)(1) challenges the authority of a federal court to consider a case or claim.  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) ("At issue in a Rule 12(b)(1) motion is the court's very power to hear the case." (internal quotations omitted)).  "A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under this standard,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *See id.* Put differently, while a court should accept the truth of a

complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal

conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and

quotations omitted).

### III.   ARGUMENT

Plaintiffs bring two constitutional claims against the City, one for alleged violations of

their due process rights under the Fourteenth Amendment and one for alleged seizure of their

vehicles under the Fourth Amendment. Regarding the former, Plaintiffs contend the City

violated due process by failing "to provide adequate post-deprivation notice to those whose

legally parked vehicles are towed;" by failing to maintain records and advise individuals whose

vehicles were towed about the new location; by failing to ensure that relocated vehicles do not

accumulate additional tickets or fines; by failing "to provide adequate safeguards against

improper listing of towed vehicles as stolen;" and by failing to train City personnel "on how to

maintain records of vehicle relocations and respond to reports from vehicle owners and operators

that a vehicle has been relocated." Am. Compl. ¶ 324(a-e). Regarding the latter, Plaintiffs aver

that the relocation of their vehicles "results in the unreasonable seizure and displacement of their

vehicles in the absence of any wrongdoing on their part and in the absence of adequate

safeguards to protect against arbitrary loss of possession, use, and enjoyment of the vehicles that

have been relocated." *Id.* ¶ 326.

To state a § 1983 claim against the City, however, a plaintiff must allege that (1) a

constitutionally-protected right has been violated and (2) the alleged violation resulted from a

municipal policy or custom that exhibits deliberate indifference to rights of citizens.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978).  Plaintiffs certainly describe difficulties they encountered after having looked for their vehicles after having not checked on them for periods of time.  Several of them allege difficulties they encountered in dealing with the Philadelphia Parking Authority, a legally independent agency.  Plaintiffs do not, however, sufficiently allege facts that support either of their claims of constitutional harm – some aspects of which are not of constitutional dimension – and their Amended Complaint should be dismissed.  The same pleading deficiencies also undermine Plaintiffs' standing to sue as putative class action plaintiffs, because they do not claim an injury that is fairly traceable to the City.  The City first addresses standing and then, because Plaintiffs' claims arise both out of the temporary seizure of their vehicles and the process by which they looked for them, the City next addresses their seizure claim and then their process claim.

A.  *Named Plaintiffs Lack Standing to Pursue the Claims for Class-wide Relief, Warranting Dismissal*

"[W]hen the issue presented in a motion to dismiss concerns solely whether the named plaintiffs have standing to assert class action claims, the named plaintiffs' standing is a threshold issue, and there is no reason to defer the named plaintiffs' standing determination until class certification."  *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 882, n.11 (E.D. Pa. 2012); *see also In re Flonase Antitrust Litigation*, 692 F. Supp. 2d 524, 534 (E.D. Pa. 2010) (finding no reason to defer the standing determination until after class certification because "[n]amed plaintiffs must have case or controversy standing").  As articulated by the Third Circuit Court of Appeals in the *Horizon Healthcare* putative class action litigation:

> There are three well-recognized elements of Article III standing: First, an 'injury in fact,' or an 'invasion of a legally protected interest' that is 'concrete and particularized.'  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119

> L.Ed.2d 351 (1992).   Second, a 'causal connection between the injury and the
> conduct complained of[.]'   *Id.*   And third, a likelihood 'that the injury will be
> redressed by a favorable decision.'   *Id.* at 561, 112 S.Ct. 2130 (citation and internal
> quotation marks omitted).

*Horizon Healthcare*, 846 F.3d at 633.

In considering standing, the Court must look to the claims being brought and the relief

sought.  This is because, "[a]t an irreducible minimum, Art. III requires the party who invokes

the court's authority to show that he personally has suffered some actual or threatened injury as a

result of the putatively illegal conduct of the defendant, . . . and that the injury fairly can be

traced to the challenged action and is likely to be redressed by a favorable decision . . . ."  *Pa.*

*Prison Soc'y v. Cortes*, 508 F.3d 156, 161 (3d Cir. 2007) (quoting *Bender v. Williamsport Area*

*Sch. Dist.*, 475 U.S. 534, 542 (1986)).  Here, the named Plaintiffs seek unspecified injunctive and

monetary relief for their claimed harms.  Am. Compl. at Prayer for Relief.  However, the factual

allegations in the operative pleading do not establish that all the named Plaintiffs were actually

harmed by the City in the manner they claim, and the Amended Complaint should be dismissed

for lack of subject matter jurisdiction.

To reiterate the above, the Supreme Court, in *Lewis v. Casey*, held that the requirement of

actual injury to establish standing "is no less true with respect to class actions than with respect

to other suits."  518 U.S. 343, 357 (1996).  Specifically, the *Lewis* Court explained: "That a suit

may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who

represent a class must allege and show that they personally have been injured, not that injury has

been suffered by other, unidentified members of the class to which they belong and which they

purport to represent."  *Id.* (alteration in original) (internal quotation marks omitted) (quoting

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).  Nor does the

requirement differ where plaintiffs are seeking prospective injunctive – rather than retrospective

– relief.  As the Supreme Court reiterated in *Christopher v. Harbury*, "even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim."  536 U.S. 403, 415 (2002) (quoting *Lewis*, 518 U.S. at 353 n.3).  Though the *Lewis* and *Christopher* cases specifically addressed claims raised in the carceral context, their conclusion applies with equal measure to other claims, and should guide this Court's consideration of each Plaintiff's standing to pursue the claims for relief.

Plaintiffs itemize five policies or practices that they suggest expose the City to liability for due process harms.  First, they contend that individuals are not provided adequate post-deprivation notice to "those whose legally parked vehicles are towed."  Am. Compl. ¶ 324(a).  But this theory is inapplicable to several of the named Plaintiffs, who by their own allegations were parked in locations that were not actually legal spots at the point in time at which the vehicles were relocated.  *See, e.g.*, Am. Compl. ¶¶ 111-31 (Dilliplane parked in a location with a no parking sign, albeit one he misread); ¶¶ 132-56 (Ditomasso parked in a location with no parking signs); ¶¶ 157-76 (Foley parked in a location with no parking signs); ¶¶ 233-46 (Larson parked in a location with no parking signs); ¶¶ 275-97 (Tran parked in a location with no parking signs); and ¶¶ 298-305 (Travis parked in a location with no parking signs).  These individuals thus cannot establish any harm consistent with the theory of liability, given that the locations they were parked in were not, for some period of time, valid parking spaces.

Second, Plaintiffs contend that the City fails to maintain adequate records of relocated vehicles and thus fails to inform owners of vehicle locations.  Am. Compl. ¶ 324(b).  In addition to presupposing that the City receives information about such relocations, several of the named Plaintiffs specifically allege that they located their vehicles either with the assistance of City personnel or simply by walking nearby.  *See, e.g.*, Am. Compl. ¶¶ 298-305 (Travis walked

13

around and found his car); ¶¶ 265-74 (Smith located her vehicle within forty-five minutes after returning from vacation and walking around); ¶¶ 275-97 (Tran's vehicle located within a few hours by PPD); ¶¶ 190-205 (Rue went directly to Lemon Hill and located vehicle which had been towed that day).  Given that their vehicles were, in fact, readily located, they cannot establish a harm attributable to the City.

Third, Plaintiffs contend their due process rights are violated when their vehicles accumulate tickets after having been relocated.  Am. Compl. ¶ 324(c).  But Plaintiffs specifically allege that they have process available to them to challenge such tickets and fines.  *See, e.g.*, Am. Compl. ¶¶ 157-76 (PPA appeal); ¶¶ 206-32 (PPA appeal); ¶¶ 247-264 (PPA appeal); ¶¶ 265-274 (PPA appeal).  Given the available appellate process and procedures for individuals to challenge tickets and fines through the PPA (again, an agency that is statutorily independent of the City of Philadelphia), Plaintiffs cannot establish a harm attributable to the City.

Fourth, Plaintiffs contend their due process rights are violated because the City "fails to provide adequate safeguards against improper listing of towed vehicles as stolen."  Am. Compl. ¶ 324(d).  It is unclear how, if at all, Plaintiffs have a property right in the reported status of their listed vehicle such that there is a cognizable constitutional claim or harm attributable to the City for same.

Fifth, Plaintiffs contend that their due process rights are violated because the City "fails to train City personnel, including PPD, on how to maintain records of vehicle relocations and respond to reports form vehicle owners and operators that a vehicle has been relocated."  Am. Compl. ¶ 324(e).  Again, it is unclear how, if at all, Plaintiffs have a property right in the maintenance of records by the City such that this theory implicates a constitutional right, let alone one that was violated.

Turning to Plaintiffs' allegations of unlawful seizure, they are similarly unsupported by the factual allegations.  In their prayer for relief, Plaintiffs contend that they were subjected to "unreasonable seizure and displacement of their vehicles in the absence of any wrongdoing on their part[.]"  Am. Compl. ¶ 326.  But as summarized above, a significant majority of the named Plaintiffs had their cars towed from locations that were not legal parking spaces for a period of time. They thus cannot establish a cognizable injury of unlawful seizure.  Regarding whether the alleged injury is fairly traceable to the City, several of the named Plaintiffs had their vehicles towed and impounded by the Philadelphia Parking Authority, an independent agency whose actions are not, notwithstanding Plaintiffs pleadings to the contrary, attributable to the City.  *See, e.g.*, *City of Philadelphia v. Philadelphia Parking Authority*, 798 A.2d 161 (Pa. 2002) ("in light of Act 22's transfer of control of the governing board (Board) of the Philadelphia Parking Authority (PPA) from the Mayor of Philadelphia to the Governor, PPA constitutes part of the Commonwealth government for purposes of the Commonwealth Court's original jurisdiction"); Am. Compl. ¶¶ 157-76; 111-131.

Closely considering the specific factual allegations of each of the putative named Plaintiffs, they do not allege sufficient facts that would give them standing to pursue relief for the claimed harms.  *Lujan*, 504 U.S. at 560.  Consequently, the Amended Complaint should be dismissed for lack of jurisdiction.

**B.  *Plaintiffs' Fourth Amendment Claim Should Be Dismissed for the Alternative Reason that Plaintiffs Do Not Allege Facts that Establish a Seizure for which the City is Responsible***

Generally speaking, "the impound of an automobile is a Fourth Amendment seizure."  *Draper v. Upper Darby Twp. Police Dep't*, 2012 WL 93178, at *2 (E.D. Pa. Jan 11, 2012).  In such a situation, "the crux of whether the Fourth Amendment was violated depends on the objective reasonableness of the seizure."  *Rosado v. City of Coatesville*, No. 19-2426, 2020

WL 1508351, at *4 (E.D. Pa. Mar. 30, 2020). Such inquiry and the applicable legal framework rests upon the fact that the government actor did, in fact, take possession of the vehicle that is the subject of the alleged seizure. Indeed, "[t]o establish a section 1983 civil rights claim, a plaintiff 'must demonstrate that the conduct complained of was committed by a person acting under state law and 'that the conduct deprived him of rights, privileges or immunities secured by the constitution.'" *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1255–56 (3d Cir. 1994) (quoting *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir. 1993)).

Plaintiffs together manifest several factual deficiencies which undermine their claim of unlawful seizure. First, the majority of them allege either that they were parked in locations that were not lawful parking spots (albeit temporarily) or in locations at which, even if signs were not visible by the time they returned, known utility construction or event-related road clearances occurred. *See, e.g.*, Am. Compl. ¶¶ 111-31 (Dilliplane parked in a location with a no parking sign, albeit one he misread); ¶¶ 132-56 (Ditomasso parked in a location with no parking signs); ¶¶ 157-76 (Foley parked in a location with no parking signs); ¶¶ 233-46 (Larson parked in a location with no parking signs); ¶¶ 275-97 (Tran parked in a location with no parking signs); and ¶¶ 298-305 (Travis parked in a location with no parking signs); ¶¶ 177-189 (Grossman parked in an area where utility work likely occurred); ¶¶ 190-205 (Heckert and Rue ticketed for being in an unlawful spot). And though they were not parked in legal spots, few of Plaintiffs' vehicles were impounded but instead were found in locations other than where they were originally parked (two vehicles appear to have been stolen and have never been found). *See generally id.* ¶¶ 96-314. Plaintiffs thus appear to suggest that being towed from an unlawful spot – even if such towing was performed by the City (the deficiencies in such allegations are next addressed) – and not impounded but instead found elsewhere constitutes an unreasonable imposition on their

possessory interest in their vehicles.

In *Rosado v. City of Coatesville*, the Court found that plaintiff had not plead sufficient facts to establish an unlawful seizure where the towing and impoundment of the plaintiff's vehicle was consistent with the statutory structure applicable to abandoned vehicles, which permits a tow if a vehicle is "left unattended on a highway or other public property for more than 48 hours and does not bear a valid registration plate, a current certificate of inspection, or an ascertainable vehicle identification number." 2020 WL 1508351, at *5. The plaintiff had conceded in his pleading that his vehicle registration was expired, and thus a salvor appropriately towed the car such that the plaintiff could not establish that he was subjected to an unlawful seizure by a state actor. *See generally id.* While *Rosado* arises out of a different factual predicate (abandoned vehicles), it yet instructs that the reasonableness of the seizure is a function of the state and location of the car, and whether it is legally permitted to be in the spot in which it is parked. As detailed in their pleading, a majority of the plaintiffs were not in legal spots at the time at which they were towed. They thus cannot establish the temporary imposition on their property right in the vehicle was unreasonable, and thus cannot establish their Fourth Amendment claim.

Separately, some Plaintiffs allege facts that clearly establish their alleged harms are attributable to the PPA, an agency which is, as a matter of law, separate from the City of Philadelphia. Am. Compl. ¶¶ 157-76 (PPA towed and impounded vehicle); ¶¶ 111-131 (PPA towed and impounded vehicle after PPD ticket); *City of Philadelphia v. Philadelphia Parking Authority*, 798 A.2d 161 (Pa. 2002). Other Plaintiffs do not allege facts that suggest the City was involved with their vehicle tow at all. *Id.* ¶¶ 206-232 (no contention about circumstances surrounding relocation of the vehicle); ¶¶ 247-264 (same); ¶¶ 265-274 (suggestion that possibly

PECO relocated the vehicle but no confirmation); ¶¶ 306-314 (no contention about circumstances surrounding relocation of the vehicle).  These claims should thus be dismissed for the alternative reason that they do not allege facts that suggest that their vehicles were towed "under color of state law," which must be established before, assuming adequate pleading of a policy, practice or custom, the City might be held liable for same.  *Piecknick*, 36 F.3d at 1255–56.  For all these reasons, Plaintiffs fail to state a claim for unlawful seizure under the Fourth Amendment, and this claim should be dismissed.

C.   *Plaintiffs' Fourteenth Amendment Claim Should Be Dismissed for the Alternative Reason that They Do Not Allege Facts that Establish They Experienced a Due Process Violation*

To state a procedural due process claim, a plaintiff must allege that they were deprived of "an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and the procedures available to [them] did not provide due process of law." *Abernathy v. City of Pittsburgh*, 795 F. App'x 85, 86-87 (3d Cir. 2020).[3]  "Because it is a flexible concept, the procedural protections afforded by due process will vary depending on the particular situation." *Duffy v. City of Stanton, Kentucky*, 423 F. Supp. 2d 683, 687 (E.D. Ky. 2006) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  "To determine the level of process due in a given situation, courts take into account: (1) the private interest affected by the government's action; (2) the risk of erroneous deprivation under lesser procedures and the value added by additional procedure; and (3) the Government's interests, including fiscal and

---

[3] Given the applicable law, Plaintiffs are presumably only pursing a procedural due process claim.  *See Rosado*, 2020 WL 1508351, at *3 n. 3 ("Although individuals enjoy a substantive property interest in real property ownership, the Third Circuit has not extended this right to the ownership of other personal property, such as vehicles.").  To the extent they seek to make a claim of substantive due process violation, it should be dismissed consistent with the rule explicated in *Rosado*.  *Id.*

administrative burdens for additional procedure." *Tate v. Schember*, No. 19-179, 2019 WL 3860187, at *4 (W.D. Pa. Aug. 16, 2019). "'Where there is the necessity of quick action by the State, or where providing any meaningful pre-deprivation process would be impractical,' an adequate post-deprivation remedy is sufficient to protect an individual's due process rights." *Id.* (quoting *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008)).[4] In *Abernathy*, the court found that no pre-deprivation process was required because of the necessity of towing the vehicle to permit paving. *Abernathy*, 795 F. App'x at 87.

Plaintiffs functionally contend that the inability of the City to immediately advise them of the location to which their vehicles were towed—by identified or unidentified private entities or by the PPA or by the Police Tow Squad—implicates their due process rights to adequate post-deprivation process. Notably, many of them allege that they reached out to their local police districts but individuals there were not able to tell them where, or by whom, their vehicles had been relocated. At the same time, all but two of the Plaintiffs found their vehicles, either with the assistance of City or non-City employees or by walking around their neighborhoods. And those Plaintiffs who accumulated tickets in the new vehicle location were able to, albeit unsuccessfully, challenge the tickets through the structured process available to them. The limited imposition on the possessory interest of the Plaintiffs who were parked in unlawful spots, and the availability of process to challenge any fines or tickets, suggests that they cannot establish any due process violation on the facts as alleged and their due process claim should be dismissed.

---

[4] That none of the Plaintiffs had a routine practice of checking on their vehicles – leaving them without care for time periods between four days and a month – suggests that they would have trouble substantiating their contention that they were not provided adequate pre-deprivation notice if the reason for the towing of their vehicles was the posting of temporary no parking signs.

Claims contesting post-deprivation processes generally arise in the context of a vehicle being impounded.  By way of example, in *Shaheed v. City of Wilmington* the plaintiff argued that the requirement to pay towing and impound lot fees prior to contesting a tow rendered the post-deprivation process unconstitutional.  No 21-1333, 2022 WL 16948762, at *6-7 (D. Del. Nov. 15, 2022).  The district court found otherwise, noting that while "the uninterrupted use of a car" "can be significant, the risk of an erroneous deprivation is minimal.  Moreover, the government's interest – ensuring that the owner of the illegally parked vehicle pays for its removal from the street and retaining possession of the vehicle as security for payment of the outstanding ticket debt and towing and storage fees – substantially outweighs the private interest."  *Id.*  Here, the few Plaintiffs that did accrue tickets or fines had the opportunity – which they took – to challenge those tickets, albeit unsuccessfully, through PPA and up to the Philadelphia Court of Common Pleas.  Further, some courts have held that the access to private causes of action arising out of an allegedly unlawful vehicle seizure is itself sufficient post-deprivation process to satisfy the Fourteenth Amendment.  *Olarte v. Cywinski*, No. 12-632, 2012 WL 3757649, at *5-6 (M.D. Pa. Aug. 28, 2012) (granting defendants' motion to dismiss a due process claim "because replevin and conversion are available post-deprivation state law remedies[.]").

Consistent with the above, Plaintiffs have not adequately alleged whether or how their experiences amount to a due process violation, and this claim should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' Amended Complaint.


Date:  March 31, 2023                                  Respectfully submitted,

                                                                          /s/ *Anne B. Taylor*
                                                                          Anne B. Taylor

Chief Deputy City Solicitor
Pa. Attorney ID No. 206057
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5381 (phone)
215-683-5397 (fax)
anne.taylor@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MACKENZIE SMITH, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-5092** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendant.** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the City of Philadelphia's Motion to Dismiss

Plaintiff's Amended Complaint was filed via the Court's electronic filing system and is available

for viewing and downloading.


Date:  March 31, 2023                          Respectfully submitted,

                                               /s/ *Anne B. Taylor*
                                               Anne B. Taylor
                                               Chief Deputy City Solicitor
                                               Pa. Attorney ID No. 206057
                                               City of Philadelphia Law Department
                                               1515 Arch Street, 14th Floor
                                               Philadelphia, PA 19102
                                               215-683-5381 (phone)
                                               215-683-5397 (fax)
                                               anne.taylor@phila.gov